# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| MARGARET L. MINERD, | : | Case No. 3:16-cv-00436 |
| Plaintiff, | : | Magistrate Judge Sharon L. Ovington |
| | : | (by full consent of the parties) |
| vs. | : | |
| NANCY A. BERRYHILL,<br>Commissioner of the Social Security<br>Administration, | : | |
| Defendant. | : | |

# DECISION AND ENTRY

## I.  Introduction

Plaintiff Margaret L. Minerd applied for Supplemental Security Income in January 2014 asserting that she could no longer work due to her health problems and their negative impact upon her. A social security Administrative Law Judge (ALJ), Benjamin Chaykin, determined that Plaintiff's health problems did not constitute a "disability" as defined in the Social Security Act. He therefore denied Plaintiff's application.

Plaintiff brings the present case challenging ALJ Chaykin's decision with regard to her work limitations caused by her Crohn's flare-ups. She maintains that the ALJ erred in finding she could perform work that limited her to being off task during 5% of the workday and erred in failing to find that she could only perform work that permitted her to be off task more than 10% of the workday. She relies on her testimony concerning

her need for lengthy bed rest when she experiences a Crohn's flare-up, the increase in the frequency of these flare-ups, and her additional problems with nausea, vomiting, and arthritis in her tailbone and hipbone secondary to Crohn's disease. These problems plus uncontrolled bowel movements and fatigue would cause her to be off task more than 10% of the work day, a work preclusive limitation, according to a vocational expert.

The Commissioner argues that substantial evidence supports the ALJ's assessment of Plaintiff's residual functional capacity, or the most she could do despite her impairments. *See Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002). This includes the ALJ's determination that Plaintiff was limited to being off task for 5% of the workday. The Commissioner further contends that, although Plaintiff has waived any credibility-based argument, the ALJ properly evaluated her credibility and substantial evidence supports the ALJ's credibility findings.

**II.    Background**

Plaintiff was 36 years old on the date she filed her application for Supplemental Security Income. This placed her in the Social Security Administration's category of younger person. 20 C.F.R. § 416.963(c). She is considered, under social security law, to have a limited education. She worked in the past as a cashier and a waitress.

Plaintiff testified during a hearing before ALJ Chaykin that most of the time she does not feel well due to "back and hip problems from the ankylosing spondylitis and … Crohn's." (Doc. #4, *PageID* #s 245, 254-55). She gets nauseated "and sick and then a lot of times [she's] depressed." *Id.* Most days she just lies in bed. *Id.* She stays in bed for a large part of the day, or the whole day, "at least a couple times a week probably."

*Id*.

On days when her Crohn's disease flares up, she wears an adult diaper. When asked how often she has a Crohn's flare-up, she answered, "This year I've been—it's been quite often. I've been hospitalized … several times for it this year but normally, I mean, well, I guess on my good years maybe a couple of times a year…, I'll have flare[-]ups and it's not an everyday thing…." *Id*. at 251. She clarified that during the two years before the ALJ's hearing in November 2015, her flare-ups steadily became more frequent and more painful. She noted, '[T]his year alone has been incredibly bad." *Id*. at 263. She suffered 9 or 10 flare-ups, about one per month, during 2015. *Id*. at 263-64. Her flare-ups can last for a few days to a few weeks, and she has been hospitalized for 30 days (in 2003) or more because of that condition. *Id*. at 264, 269.

Plaintiff's last job, working as a cashier, ended when she lost control of her bowels in front of customers. She noted, "I was embarrassed so I left." *Id*. at 251. The joint pain Plaintiff experiences due to Crohn's disease limits her ability to sit or stand. If she sits too long, she must stand up; if she stands too long, she must sit down. *Id*. at 261. She estimated that she can stand for 15 minutes before needing to sit down. She can sit for 30 to 40 minutes. *Id*. at 265-66. Lying down helps relieve her pain by taking pressure off her lower back and hip.

Plaintiff also suffers from bipolar disorder. When she experiences a manic episode, she has "an unbelievable surge in energy…," *id*. at 259, and she engages in careless spending. She also does things that she normally cannot do but "ends up paying for it." *Id*. She sees her psychiatrist, Dr. Gainer, who monitors her condition and adjusts

3

her medications. *Id*. She testified that her bipolar disorder would affect her ability to perform a job because she gets really nervous around others. Her anxiety also causes her to be paranoid. She added, "I always feel like people are talking about me or … judging me or something." *Id*. at 261.

Plaintiff attends church on Sundays. She does not go to stores or do anything outside her home. She explains, "That's a problem—my life is just about—doctors…." *Id*. at 261. During a typical day, she mainly watches television and sleeps. She engages in social networking on Facebook and with friends through church.

As to the medical evidence of record, Plaintiff has provided a detailed description of those records, and the Commissioner relies on the ALJ's detailed description. There is no need to repeat their cogent descriptions, and the most pertinent evidence will be discussed when addressing the parties' arguments.

Turning to the medical evidence, Plaintiff generally agrees with the ALJ's summary. A few highlights, however, are worth mentioning.

In February 2014, Teresita Cruz, M.D., reviewed the record for the state agency and concluded that Plaintiff could perform light work. *Id*. at 286. In September 2014, Edmond Garner, M.D., reviewed the record and agreed with Dr. Cruz. *Id*. at 303-06.

In March 2014, a record-reviewing psychologist, Kristen Haskins, Psy.D., recognized that Plaintiff had an affective disorder and anxiety disorder. Dr. Haskins opined that Plaintiff had a mild restriction in her activities of daily living and a moderate level of difficulties in social functioning and in maintaining concentration, persistence, or pace. *Id*. at 284. Psychologist Paul Tangeman, Ph.D., agreed with Dr. Haskins opinions

4

in July 2014. *Id*. at 302.

In January 2014, Dr. Gainer completed a mental residual functional capacity assessment. She listed Plaintiff's diagnoses as including bipolar disorder, type I; depression with psychotic features; and anxiety-related disorder. *Id*. at 652. Dr. Gainer opined that Plaintiff had marked limitations in her ability to remember locations and work-like procedures; to understand and remember very short and simple instructions; to maintain attention and concentration for extended periods; to make simple work-related decisions; to interact appropriately with the general public; to travel to unfamiliar places or use public transportation; and the ability to tolerate normal levels of stress. *Id* at 653-55. Dr. Gainer thought Plaintiff had extreme—or no ability—to work in coordination with or proximity to others without being distracted by them; and to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number of and length of rest periods. *Id*. Dr. Gainer explained, "Ms. Minerd has limited ability to handle her stressors due to her mental health symptoms. A work environment would likely exacerbate her symptoms." *Id*. at 655.

Perhaps most significantly for present purposes, Dr. Gainer indicated that Plaintiff's impairments would substantially interfere with her ability to work on a regular and sustained basis at least 20% of the time, and she would need to miss work 15 days per month due to her mental impairment or treatment of her mental impairment. *Id*.

### III.  The ALJ's Decision

Plaintiff's eligibility to receive Supplemental Security hinged on whether she was

5

under a "disability" as defined under social security law. *See* 42 U.S.C. §§ 423(d)(1)(A)-(d)(2)(A), 1381a; *see also Bowen v. City of New York*, 476 U.S. 467, 470 (1986). To determine if she was under such a disability, ALJ Chaykin evaluated the evidence under the Social Security Administration's 5-step procedure. 20 C.F.R. §§ 416.920(a)(4). Moving through step 1, the ALJ found at steps 2 and 3 that Plaintiff's impairments—including her severe impairments—"Crohn's disease, irritable bowel syndrome, (IBS), bilateral joint effusion and tenderness of knees and ankles secondary to polyarthritis, bipolar disorder, and anxiety disorder," (Doc. #4, *PageID* #s 217-22)—did not automatically entitle her to benefits. *Id*. at 217-22.

At step 4, the ALJ assessed Plaintiff's residual functional capacity at the light level of work subject to the following limitations:

> (1) lifting up to 20 pounds occasionally and up to 10 pounds frequently; (2) standing and/or walking up to 6 hours; (3) sitting up to 6 hours; (4) no climbing of ropes, scaffolds or ladders; (4) occasional climbing of ramps or stairs; (6) occasional stooping, kneeling, crouching, crawling and balancing; (7) no exposure to dangerous hazards such as unprotected heights, dangerous equipment, and no commercial driving; (8) occasional foot controls bilaterally; (9) no exposure to extreme cold, wetness or humidity; (10) limited to performing simple, routine, and repetitive tasks, but not at a production rate pace or strict quota; (11) occasional interaction with supervisors and coworkers; (12) no interaction with the public; (13) limited to a static work environment, with few changes in the work setting; (14) no teamwork or tandem tasks; (15) off for 5% of the workday in addition to normal breaks.

*Id*. at 223. The ALJ also found at step 4 that Plaintiff could not perform her past relevant work. At step 5, the ALJ concluded that Plaintiff could perform a significant number of available jobs. *Id*. at 229-30. This led ALJ Chaykin to conclude, in the end, that Plaintiff was not under a disability and not entitled to benefits. *Id*.

**IV.  Standard of Review**

The present review of ALJ Chaykin's decision determines whether he applied the correct legal standards and whether substantial evidence supports his findings. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). If he failed to apply the correct legal criteria, his decision may be fatally flawed even if the record contains substantial evidence supporting his findings. *Rabbers*, 582 F.3d at 651; *see Bowen*, 478 F.3d at 746; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004). Substantial evidence supports a finding when "a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance ...." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

**V.  Discussion**

**A.  <u>Plaintiff's Residual Functional Capacity</u>**

Plaintiff's contention that the ALJ erred by finding her limited to work permitting her to be off task 5% of the workday implicates both her physical and mental impairments.

Starting with her physical impairments, including Crohn's disease, irritable bowel syndrome, abdominal pain, inflammatory arthritis causing joint tenderness and effusing in her ankles and knees, the ALJ found that the objective and clinical findings regarding these disorders were minimal, there was reported control with medication, and Plaintiff's

symptoms were noted to be mild in severity. (Doc. #4, *PageID* #s 217, 223-24, 226). Substantial evidence supports these findings. *Id*. at 617, 627, 656-91, 767, 1848, 1894, 1898, 1911, 1913, 1915. The ALJ discussed Plaintiff's arthritis, noting only slight tenderness on examination, full range of motion and stability, and that Plaintiff is under pain management treatment for arthritis. Substantial evidence supports these findings. *Id*. at 218, 523-54, 717-755, 1817-44, 2187-2219).

With regard to depression and anxiety, the ALJ noted that Plaintiff is treated with medication, which she reports helps a little but not completely. *Id*. at 218-22. The ALJ discussed Plaintiff's mental-status examinations, which were mostly normal, and revealed few abnormalities. *Id*. at 220, 225, 227. Substantial evidence shows she had normal speech, thought process, thought content, and cognition, with no evidence of psychosis. *Id*. at 589, 710, 2041, 2045, 2049, 2053. The ALJ also correctly noted Plaintiff's report that she was hospitalized twice in 2015 for mental-health symptoms. *Id*. at 218; *see id*. at 1233-1330, 1313, 2057. These hospitalizations did not require the ALJ to find Plaintiff more limited in her mental-work abilities than indicated in his assessment of her residual functional capacity. Plaintiff, moreover, testified that she sees psychiatrist Dr. Gainer once a month, or if she is "doing OK," only once every three months, *id*. at 218, 2057, a fact tending to show that the reasons for her hospitalizations did not adhere for much of 2015.

The ALJ also properly considered Plaintiff's activities of daily living as required under the social security regulations. *See* 20 C.F.R. § 416.929(a). The ALJ noted that Plaintiff uses Facebook to talk to church friends; she wanted to attempt to sing in the

church Christmas choir in 2015; she lives with her sister and is able to do a few household chores, including dishes, but not often; she drives; she is the caregiver for her mother-in-law, and brings her groceries; and she has no problem maintaining personal hygiene and appropriate appearance. (Doc. #4, *PageID* #s 218, 225). It was not error for the ALJ to consider Plaintiff's ability to engage in these activities as part of his credibility assessment. *See* Soc. Sec. R. 96-7p, 1996 WL 374186, *3 (an ALJ may consider statements about a claimant's daily activities); *see also Blacha v. Sec'y of HHS*, 927 F.2d 228, 231 (6th Cir. 1990) (as a matter of law, the ALJ may consider a claimant's household and social activities); *Buxton v. Halter*, 246 F.3d 762, 775 (6th Cir. 2001) ("Buxton's own accounts of her activities and limitations were also conflicting. For instance, she shops for herself, does light cleaning, cooks for herself, drives herself places (including numerous doctors' visits), and exercises daily (thirty minutes of walking without post-exertional collapse), but cannot work.").

To the extent that Plaintiff is challenging the ALJ's credibility findings, she has not shown that the ALJ's findings lack substantial supporting evidence or that the ALJ failed to apply the correct legal criteria. The ALJ's decision, moreover, considers and discusses the applicable legal criteria and the record reasonably supports the ALJ's finding that Plaintiff's complaints of debilitating symptoms were not entirely credible. Specifically, the ALJ noted that a residual functional capacity for light work with the additional limitations applied accounted for the minimal objective and clinical findings of record. (Doc. #4, *PageID* # 226). The ALJ further noted that the record documented few reports of side effects from medication or treatment. *Id*. While the ALJ acknowledged

Plaintiff's allegations of significant, chronic, and ongoing abdominal pain secondary to Crohn's disease and irritable bowel syndrome, he correctly noted the minimal objective and clinical findings in Plaintiff's medical records. Plaintiff, moreover, informed her rheumatologist that medication provided good relief from her digestive symptoms, as the ALJ correctly observed. *Id*. at 226, 767.

The ALJ also properly referred to physical examinations and radiographic imaging of Plaintiff's ankles and knees, and he correctly noted that this evidence documents only some joint effusion and tenderness with no apparent range of motion or ambulation difficulties, and no evidence of muscle weakness or deficit. *Id*. at 226.

With regard to Plaintiff's mental limitations, the ALJ noted that she was admitted to the hospital for increased symptoms in 2015, but she also acknowledged to hospital personnel that she had been untruthful about her symptoms. *Id*. at 226-27; *see PageID* #1313. Her mental status improved considerably with treatment compliance. Although she reported hearing voices and seeing things, her treatment records never documented any evidence of psychosis. *Id*. at #227. Furthermore, the ALJ recognized that Plaintiff was able to care for her mother-in-law, including running errands and bringing her groceries, undermined her contention that she was as limited as alleged. The ALJ properly considered the credibility of Plaintiff's subjective complaints and determined that the severity of her allegations was not entirely credible.

Plaintiff points to her own subjective testimony to support her claim that she would be off-task over ten percent of the workday. This is insufficient without some supporting medical opinion or other medical evidence. Such evidence appears in the

form of Dr. Gainer's opinion that Plaintiff would be off-task 25% of a workday and would miss 15 days of work each month due to her impairments or treatment. *Supra*, §II.

The ALJ, however, ALJ placed some weight, albeit not controlling or deferential weight, on Dr. Gainer's opinions. (Doc. #4, *PageID* #229). Doing so, the ALJ described in detail and applied the correct legal criteria, *see id*. at 227-29, and provided "good reasons" for not placing controlling or deferential weight on Dr. Gainer's opinions. The ALJ found that Dr. Gainer provided no explanation as to why Plaintiff would experience such significant interference in her ability to work, given her generally mild mental status findings. *Id*. at 228. Substantial evidence supports this. Dr. Gainer indicated only that Plaintiff had limited ability to handle stressors and working would likely exacerbate her symptoms, as the ALJ correctly recognized. *Id*. at 228, 655. Without more, this scintilla of information did not compel the ALJ to place controlling or deferential weight on Dr. Gainer's opinions. *See* 20 C.F.R. §416.927(c)(2)-(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion…."). The ALJ, moreover, properly considered "the lack of reported cognitive, thought process, or thought content abnormalities, as well as the frequency of treatment by Dr. Gainer, it is difficult to reconcile her statement that the claimant would miss 15 days of work …." (Doc. #4, *PageID* #229). This correctly examined the consistency of Dr. Gainer's opinions with other evidence in the record. *See* 20 C.F.R. § 416.927(d)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will

11

give that opinion."); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 652 (6th Cir. 2006) (en banc) ("'[t]his court has consistently stated that the Secretary is not bound by the treating physician's opinions, and that such opinions receive great weight only if they are supported by sufficient clinical findings and are consistent with the evidence.'" (citation omitted)).

Accordingly, for all the above reasons, the ALJ's assessment of Plaintiff's residual functional capacity is not infected by legal error and substantial evidence supports his finding that Plaintiff could perform light work with 15 specific limitations.

### B. Vocational Expert Testimony

Plaintiff argues that the ALJ erred by failing to discuss and accept the vocational expert's testimony that being off task more than 10% of the workday, or being absent more than one day a month on average, would be work preclusive. This argument lacks merit because the ALJ properly assessed Plaintiff's residual functional capacity, and substantial evidence supports his assessment, including his conclusion that Plaintiff was limited to work allowing her to be off task 5% of the workday. The ALJ included his proper assessment of Plaintiff's residual functional capacity into his hypothetical questions. *See* Doc. #4, *PageID* #s 272-73. The ALJ was not required to adopt the vocational expert's testimony about a hypothetical person who was more limited than Plaintiff, including a person who could only perform jobs allowing her to be off task more than 10% if the workday. "It is well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations

accepted as credible by the finder of fact." *Casey v. Sec'y of HHS*, 987 F.2d 1230, 1235 (6th Cir. 1993).

Accordingly, Plaintiff's contentions regarding the vocational expert's testimony lack merit.

**IT IS THEREFORE ORDERED THAT:**

1. The Commissioner's non-disability finding is affirmed; and
2. The case is terminated on the docket of this Court.

March 26, 2018 *s/Sharon L. Ovington*
Sharon L. Ovington
United States Magistrate Judge